IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER LAYMAN, | ) Civ. No. 12-00602 ACK-BMK |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LAHAINA DIVERS, INC., and M/V | ) |
| DAUNTLESS USCG Doc. No.: | ) |
| 1148204, her tackle, rigging and | ) |
| appurtenances *en rem*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

For the following reasons, the Court hereby GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Partial Summary Judgment.

## FACTUAL BACKGROUND[1]

This matter arises under admiralty law. Plaintiff Christopher Layman alleges that he was injured while working as a PADI certified[2] SCUBA diver for Defendant Lahaina Divers, Inc. ("LDI"). LDI is a dive tour company and dive shop based in Lahaina Maui. (Pl.'s Concise Statement of Facts ("CSF") ¶ 1.0.)

---

[1] The facts as recited in this order are for the purpose of disposing of the current [motion(s)/appeal(s)/issue(s)] and are not to be construed as findings of fact that the parties may rely on in future proceedings.

[2] PADI stands for Professional Association of Diving Instructors. (Mot. at 5 n.4.)

LDI owns and operates two 46-foot sister ships, the *Dauntless* and the *Dominion*, that take passengers for hire on SCUBA dive tours to Lanai, Molokini, Molokai, and Maui. (Id. ¶ 1.1.) Both the *Dauntless* and the *Dominion* are required to have a Coast Guard certificate of inspection indicating that they are certified to carry passengers for hire. (Id. ¶ 1.2, Ex. 1 ("Howeth Depo.") at 46.)

Plaintiff has been working "on and off for LDI since 1993" as a skipper, deck hand, and diver; however, this lawsuit arises out of the work he performed between December 29, 2010 and February 29, 2012. (Mot. at 5; Howeth Depo. at 17-18.) For purposes of this lawsuit, the parties have stipulated that Plaintiff was employed as a seaman within the meaning of the Jones Act at the time of his injuries. (Howeth Depo. at 43; Def.'s Concise Statement of Facts ("CSF") at 2.) During the period between December 29, 2010 and February 29, 2012, Plaintiff divided his time between providing SCUBA instruction, working as a dive master and dive tour leader, and conducting underwater vessel inspections, maintenance, and repair. (Mot. at 5; Pl.'s CSF ¶¶ 1.4-1.6; Def.'s CSF at 2.) Plaintiff spent approximately "less than 25 percent" of his overall dive time during that period working as a SCUBA instructor, and approximately "75 percent or more" of his overall dive time working as a dive master or dive tour leader. (Pl.'s CSF ¶¶ 1.4-1.5; Howeth Depo.

at 37; Def.'s CSF at 2.) His work as a dive master or dive tour leader involved "taking [g]roups of previously certified divers on underwater tours at the dive sites visited by LDI's vessels." (Pl.'s CSF, Layman Decl. ¶ 4.)

Plaintiff suffered three separate injuries while working as a seaman aboard LDI's vessels. On December 29, 2010, Plaintiff was injured in Lahaina Harbor when he fell into an open hatch aboard the *Dauntless*. (Pl.'s CSF ¶ 4.1; Def.'s CSF at 2.) On October 26, 2011, Plaintiff experienced severe abdominal pain following a series of SCUBA dives he made with groups of passengers from the *Dauntless* off the coast of Molokini. (Pl.'s CSF ¶ 4.2; Def.'s CSF at 2.) Following the October 26, 2011 incident, Plaintiff was diagnosed with "an occult ventral or periumbilical hernia or other soft tissue vascular posttraumatic anomaly which predisposed [Plaintiff] to transient venous bubble trapping" when he did repeated SCUBA dives. (Pl.'s CSF, Ex. 2 ("Macris Depo.") at 60-61.) Plaintiff's doctor, Dr. George Macris, advised him not to dive until the source of his abdominal pain was "better understood." (Id. at 65.) Plaintiff underwent an umbilical hernia repair on December 10, 2011. (Id. at 67.)

Greg Howeth, co-owner and Chief Executive Officer of LDI, states that, following this surgery, he instructed Plaintiff not to participate in any more LDI diving activities until further notice. (Def.'s CSF, Howeth Decl. ¶ 13.) Nevertheless,

Plaintiff states that he was cleared to return to diving on January 22, 2012.[3/] (Mot. at 7.) Plaintiff states that, on January 23, 2012, he completed a "test dive" after which Greg Howeth directed him to return to the company dive rotation. (Pl.'s CSF, Layman Decl. ¶ 8.) Mr. Howeth disputes this claim and states that any subsequent dives Plaintiff made were "entirely of his own volition," and "against the direction I gave to him." (Def.'s CSF, Howeth Decl. ¶ 13.)

On February 29, 2012, Plaintiff again experienced severe abdominal pain following another series of SCUBA dives he made while serving as a dive master for tour groups diving from the *Dominion* at Molokini Island. (Pl.'s CSF ¶ 4.3; Def.'s CSF at 2.) Plaintiff again presented with a distended abdomen and acute abdominal pain, and Dr. Macris diagnosed a "symptomatic gas embolism" caused by "some type of gas trapping either mechanical distension or distension of the venous circulation secondary to diving." (Macris Depo. at 67-68.) Greg Howeth states that Plaintiff's dives on February 29, 2012 were against the directions given to him by Howeth. (Def.'s CSF ¶ 9, Howeth Decl. ¶ 13.)

## PROCEDURAL BACKGROUND

---

[3/] Plaintiff cites "Exhibit 3 (1/25/12 Disability Certificate from Sergio Lugo, M.D.)" in support of this claim; however, no such evidence appears to be before the Court. Exhibit 3, attached to Plaintiff's Concise Statement of Facts, is the deposition of Daniel Fickett.

On November 9, 2012, Plaintiff filed his Seaman's
Complaint for Compensatory and Punitive Damages for Personal
Injuries Under the Jones Act and the General Maritime Law. (Doc.
No. 1.) On January 17, 2014, after the parties conducted some
discovery, the magistrate judge granted Plaintiff permission to
file an amended complaint. (Doc. No. 79.) On January 21, 2014,
Plaintiff filed his First Amended Complaint. (Doc. No. 80
("FAC").) In the First Amended Complaint, Plaintiff brings the
following claims: (1) Jones Act Negligence, (2) Unseaworthiness,
(3) Maintenance, Found, and Cure, (4) and Vessel Owner Negligence
under General Maritime Law. (FAC ¶¶ 5-23.)

On March 28, 2014, Plaintiff filed the instant Motion
for Partial Summary Judgment, along with a concise statement of
facts and a number of exhibits. (Doc. Nos. 88, 89.) LDI filed a
memorandum in opposition, supported by a concise statement of
facts and several exhibits, on April 21, 2014. (Doc. Nos. 106,
107.) Plaintiff filed his reply on April 25, 2014. (Doc. No.
114.) A hearing on the motion was held on May 12, 2014.

## STANDARD

Summary judgment is proper where there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a)
mandates summary judgment "against a party who fails to make a
showing sufficient to establish the existence of an element

essential to the party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>see also</u> <u>Broussard v. Univ. of Cal. at Berkeley</u>, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (citing <u>Celotex</u>, 477 U.S. at 323); <u>see also</u> <u>Jespersen v. Harrah's Operating Co.</u>, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56 [(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 586–87 (1986) (citation and internal quotation signals omitted); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it

6

could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing Anderson, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. Matsushita Elec. Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## **DISCUSSION**

The instant motion addresses only Plaintiff's Jones Act negligence claim, and concerns only the injuries that occurred on October 26, 2011 and February 29, 2012. (Mot. at 7, 9.) The Jones Act provides a cause of action for "[a]ny seaman who shall suffer personal injury in the course of his employment." 46 U.S.C. § 30104. The parties have stipulated for purposes of this litigation that Plaintiff was employed as a seaman within the meaning of the Jones Act at the time he was injured. (Pl.'s CSF ¶ 3.0; Def.'s CSF at 2.)

With the instant motion, Plaintiff seeks to establish that LDI may be held liable for per se negligence for its failure to adhere to the Coast Guard regulations governing commercial diving operations. Specifically, Plaintiff seeks an order finding

that Plaintiff was injured in the course of his employment as a
seaman with LDI, that he was engaged in "commercial diving
operations" at the time of those injuries, that his activities
were covered by the Coast Guard Commercial Diving Operations
regulations, that LDI violated those regulations, and that LDI is
therefore subject to per se liability for Plaintiff's injuries
pursuant to <u>Kernan v. American Dredging Co.</u>, 355 U.S. 426 (1958),
and the burden shifting set forth in <u>The Pennsylvania</u>, 86 U.S.
125 (1873). (Mot. at 10-11.)

## I.   Applicability of the Coast Guard Regulations

As an initial matter, the parties dispute whether the
Commercial Diving Operations regulations are even applicable to
LDI such that its violation of them may result in per se
liability. In <u>Kernan</u>, the United States Supreme Court held that,
under the Jones Act, a violation of a statute or Coast Guard
regulation that causes the injury or death of any employee
creates liability "in the absence of any showing of negligence."
355 U.S. 426, 431 (1958). Thus, under the Jones Act, "the
common-law concepts of foreseeability and risk of harm are not
applicable where the employer violates a federal statute or a
Coast Guard regulation, if such conduct in whole or in part
caused injury." <u>MacDonald v. Kahikolu Ltd.</u>, 442 F.3d 1199, 1203
(9th Cir. 2006) (<u>McDonald I</u>). Here, Plaintiff asserts that LDI
was subject to and violated the Coast Guard's Commercial Diving

8

Operations regulations and, as such, is subject to per se liability for Plaintiff's injuries. LDI counters that it has never paid any employees, including Plaintiff, to conduct any operations or tasks outside of recreational and sport diving, and has never conducted any commercial diving operations. (Def.'s CSF ¶¶ 3-6; Howeth Decl. ¶¶ 7-8.) The Court therefore turns first to the question of whether the Coast Guard's commercial diving regulations apply to LDI.

The Coast Guard Commercial Diving Operations regulations apply on their face to any "commercial diving operations taking place" from, *inter alia*, "vessels required to have a certificate of inspection issued by the Coast Guard." 46 C.F.R. § 197.202. The parties do not dispute that the *Dauntless* and the *Dominion* were "vessels required to have a certificate of inspection issued by the Coast Guard." (Pl.'s CSF ¶ 1.2; Def.'s CSF at 2.) The determination as to whether the Coast Guard regulations apply to LDI therefore turns on a determination of whether Plaintiff and LDI were involved in "commercial diving operations" at the time of Plaintiff's injuries.

The regulations define "commercial diving operation" as "all activities in support of a commercial diver." 46 C.F.R. § 197.204. "Commercial diver," in turn, is defined as "a diver engaged in underwater work for hire excluding sport and recreational diving and the instruction thereof." Id. A diver is

defined as "a person working beneath the surface, exposed to hyperbaric conditions, and using underwater breathing apparatus." Id. There is no dispute that Plaintiff, at the time of his injuries, was working for hire underwater, using an underwater breathing apparatus; rather, the dispute involves whether Plaintiff falls within the exception for "sport and recreational diving and the instruction thereof." Plaintiff argues that the regulatory language is "imperfectly expressed," but that it nevertheless means that the definition of a "commercial diver" covers all working divers except SCUBA instructors. (Mem. at 23-24.) Thus, Plaintiff asserts, while at the time of his injuries he may have been leading a tour group of recreational divers, he himself was performing underwater work for wages, and was therefore a "commercial diver" for purposes of the Coast Guard regulations. (Id. at 28-30.)

The Court disagrees. While the Court was unable to locate any authority interpreting this specific provision of the Coast Guard regulations, the Court finds that the plain language of the provision indicates that Plaintiff, as a dive master leading a recreational SCUBA diving tour, was not a commercial diver as that term is defined in the regulations. The term "commercial diver," does not broadly encompass any person who dives as part of his employment, as Plaintiff suggests. The regulation defines a commercial diver generally as "a diver

10

engaged in underwater work for hire," but expressly excludes "sport and recreational diving and the instruction thereof." 46 C.F.R. § 197.204. To adopt Plaintiff's reading of the regulation, the Court would have to read the phrase "sport and recreational diving" as superfluous, as those activities, when conducted outside the context of one's employment, would already be excluded from the definition by the limiting phrase "engaged in underwater work for hire." In other words, had the drafters meant to exclude only those sport and recreational divers who do so for pleasure, rather than for hire, it would have had no need to expressly say so, as the term "commercial diver" is already limited to only those divers who are "engaged in underwater work for hire."

As Plaintiff correctly notes, it is "a fundamental cannon of statutory construction that a statute should not be construed so as to render any of its provisions mere surplusage." United State v. Wenner, 351 F.3d 969, 975 (9th Cir. 2003). The Court therefore concludes that the definition of "commercial diver" in 46 C.F.R. § 197.204 excludes those engaged in diving for sport and recreational purposes, whether for their own pleasure or as part of their employment.[4] As such, in light of

_____

[4] Further, the cases Plaintiff attempts to rely upon in arguing that he is a commercial diver are inapposite, as the diver's status as a commercial diver was not at issue in either case. See Brooker v. Cleghorn, 907 F. Supp. 1406 (D. Haw. 1994)
(continued...)

the plain language of the Coast Guard regulation, Plaintiff's activities at the time of his injury (working as a dive master and dive tour leader) clearly fell outside of the regulatory definition of a "commercial diver."

The Court's reading of the Coast Guard regulations is supported by their regulatory history, as well as related regulations issued by the Occupational Safety and Health Administration ("OSHA"). Pursuant to a Memorandum of Understanding between the two agencies, OSHA and the Coast Guard acted in coordination when they each established standards for commercial diving. The Coast Guard and OSHA held joint public hearings on the new regulations on December 16 and 17, 1976, and the Coast Guard developed proposed regulations that had technical requirements that were "substantially similar" to the final OSHA commercial diving standards published on July 22, 1977. See Commercial Diving Operations, Final Rule, 43 Fed. Reg. 53678 (Coast Guard, Feb. 1, 1979) (detailing the procedural history of

---

[4]/(...continued)
(assessing whether an independent contractor's failure to adhere to Coast Guard regulations may be imputed to a plaintiff's employer where the plaintiff was injured while under the supervision of an independent contract diver hired by a charter vessel to assist in modifying an underwater mooring); Habel v. Grove Farm Fish & Poi, LLC, 855 F. Supp. 2d 1112, 1114 (D. Haw. 2012) (concluding that a vessel was a "towing vessel" within the reach of the Coast Guard inspection statute in a case involving a plaintiff who the parties appeared to agree performed "commercial diving tasks" for an employer that raised moi fish in open-ocean cages).

the Coast Guard regulations). The final Coast Guard standards are

thus influenced by and similar to the OSHA standards.[5/] As such,

OSHA's regulations, as well as the agency's comments on its final

rule, are relevant to the Court's analysis of the meaning of

"commercial diving" in the Coast Guard regulations.

The OSHA regulations support a reading of "commercial

diving" as involving construction-type activities, rather than

all underwater work for hire regardless of purpose and risks. For

example, in the definition of "scientific diving," which is

exempted from the OSHA regulations, OSHA explains that scientific

diving "does not include performing tasks usually associated with

commercial diving such as: Placing or removing heavy objects

underwater; inspection of pipelines or similar objects;

construction; demolition; cutting or welding; or the use of

explosives." 29 C.F.R. § 1910.402. Similarly, several statements

OSHA made at the time it released its final regulations indicate

that the term "commercial diver" does not include divers who lead

---

[5/] The Court notes that the reach of the OSHA regulations is
slightly broader than that of the Coast Guard regulations. The
Coast Guard regulations are applicable only to "commercial diving
operations," with that definition excluding "sport and
recreational diving and the instruction thereof." 46 C.F.R.
§ 197.204. The OSHA regulations, however, by their terms are not
limited only to "commercial diving operations," and contain no
similar exclusion (but do exclude, among other things, diving
"[p]erformed solely for instructional purposes" using certain
SCUBA equipment and conducted within certain depths). 29 C.F.R.
§ 1910.401. The OSHA regulations do, however, provide alternative
requirements for recreational SCUBA diving instructors and diving
guides meeting certain restrictions. Id.

recreational SCUBA diving tours. For example, OSHA lists some of
the tasks that commercial divers typically engage in:
"construction, repair, salvage, scientific observation,
inspection, pipe laying, and rescue operations," as well as
"burning, welding, and using explosives." Commercial Diving
Operations, Final Standard, 42 Fed. Reg. 37650, 37651 (July 22,
1977). Indeed, OSHA notes that SCUBA diving is generally used in
commercial diving operations "primarily for inspection and search
activities" and that the limited breathing gas supply, among
other things, "limit[s] the usefulness of SCUBA in commercial
activities . . . ." Id. Taken together, these statements indicate
that Plaintiff's work as a dive master leading SCUBA tours was
markedly different from the type of construction-related
activities that OSHA considered typical among commercial divers.

Further, in explaining why the OSHA regulations
contained exclusions for certain types of divers, OSHA expressly
noted that "the sport and recreational diving instruction groups"
provided a persuasive rationale for excluding their industry from
certain requirements, noting that they are "not task oriented,"
that "[t]he dive site is not determined by the location of a
particular job as it is in commercial applications[,]" and that
"SCUBA instructors do not utilize construction tools, handle
explosives, or use welding or burning tools [and are therefore]
rarely exposed to adverse sea states, temperature extremes, great

depths, poor visibility, or heavy work loads, some or all of
which are common to the great majority of commercial diving
operations." Id. at 37654. While the relevant exception in the
OSHA regulation applies only to diving operations "[p]erformed
solely for instructional purposes" at specific depths and with
specific equipment, it appears the rationale behind this
exception would apply equally to the arguably broader exception
contained in the Coast Guard regulations. By regulating only
"commercial divers" and expressly excluding from that definition
those engaged in "sport and recreational diving and the
instruction thereof," it appears the Coast Guard intended to
similarly exclude those diving activities that do not involve the
tasks (and risks) generally associated with commercial diving.

　　　　Indeed, the Coast Guard's June 2012 Recommendations for
Recreational Diving Operations Occurring from Commercial
Passenger Vessels support such a reading. See U.S. Coast Guard,
Assistant Commandant for Prevention Policy, Marine Safety
Advisory: Recommendations for Recreational Diving Operations
Occurring from Commercial Passenger Vessels (June 21, 2012). In
its Recommendations, the Coast Guard states that it is addressing
"Passenger Vessel Operators, Owners and Crewmembers providing
commercial transport and support services to recreational
divers," and notes that such vessels sometimes "provide[] a
diving guide or dive master . . . ." (Id. at 1-2.) It would

therefore appear that the Recommendations are aimed at the type of activity that LDI and Plaintiff were engaged in at the time of Plaintiff's injury: providing transportation and support services (including the services of a dive master) to recreational divers. The Recommendations specifically note, however, that such activities are not regulated by the Coast Guard, and that the agency "strongly recommends" certain best practices to avoid diving fatalities. (<u>Id.</u> at 1.) It thus appears that the Coast Guard itself does not believe that its Commercial Diving Operations regulations are applicable to operations like the dives Plaintiff was engaged in at the time he was injured.[6]

Plaintiff states that he was "engaged as a dive master and a dive tour leader" at the time of his 2011 and 2012 injuries. (Pl.'s CSF ¶ 5.4.) Specifically, he was leading "groups of passengers" on SCUBA dive tours of "the backwall of Molokini." (Layman Decl. ¶¶ 6, 9.) The Court concludes that this activity does not fall within the Coast Guard regulations' definition of "commercial diving operations" and, as such, the Court concludes that those regulations were not applicable to LDI at the time Plaintiff was injured.[7] Thus, to the extent Plaintiff seeks an

---

[6] The Court notes that the Recommendations are "provided for informational purposes only and do[] not relieve any domestic or international requirement." (<u>Id.</u> at 2.)

[7] In his Reply and during the hearing on the instant motion, Plaintiff argued that the Coast Guard regulations are
(continued...)

16

order finding that Plaintiff was a "commercial diver" at the time

of his injuries and, thus, LDI was subject to the Coast Guard

regulations, the motion is DENIED.

## II.   The Kernan Rule

Having concluded that the Coast Guard's Commercial

Diving Operations regulations were not applicable to LDI or

Plaintiff at the time of Plaintiff's injuries, the Court turns

next to the applicability of per se negligence pursuant to

Kernan. As noted above, the Kernan Rule provides that "common-law

concepts of foreseeability and risk of harm are not applicable

where the employer violates a federal statute or a Coast Guard

regulation[.]" MacDonald I, 442 F.3d at 1203 (citing Kernan, 355

U.S. at 438). Any seaman who proves that his employer violated a

Coast Guard regulation is entitled to a finding of per se fault

so long as the violation played "any part, even the slightest, in

producing" the seaman's injuries. Id. (internal quotation

omitted).

---

[7]/(...continued)
remedial in nature and, thus, the exclusion in the definition of
"commercial diver" should be interpreted narrowly. (Reply at 8.)
Plaintiff does not cite, however, and the Court has been unable
to identify, any support for Plaintiff's claim that the Coast
Guard regulations are remedial in nature. The regulations do not
appear to be clearly designed to remedy an existing wrong. See
Black's Law Dictionary (9th ed. 2009) (defining "remedial" in the
context of a "remedial statute" as "intended to correct, remove,
or lessen a wrong, fault or defect."). Further, it is not at all
clear that the general rule favoring the narrow construction of
exclusions applies to the interpretation of regulations, as
opposed to statutes.

Here, Plaintiff asserts that LDI violated the Coast Guard's commercial diving regulations by (1) failing to publish an "operations manual" containing safety procedures, assignments of responsibility, and equipment and checklists; (2) failing to designate a diving supervisor in writing prior to the commencement of its diving operations; and (3) failing to appoint diving supervisors who were "fully cognizant" of Coast Guard dive regulations and LDI's operations manual, who ensured that diving operations complied with the Coast Guard dive regulations, and who ensured that each diver was instructed to report any physical problems prior to each dive. (Pl.'s CSF ¶¶ 6.0-6.6.) LDI disputes this allegation insofar as LDI believes it was not a "failure" on its part to not comply with the regulations because LDI does not believe those regulations apply to its business (as discussed above). (See Def.'s CSF at 3; Howeth Decl. ¶ 12.) It does not, however, appear that LDI disputes the fact that it did not comply with the regulations. (See id.)

As discussed above, the Court concludes that the Coast Guard's commercial diving regulations were inapplicable to LDI and Plaintiff at the time of Plaintiff's injuries. Plaintiff nevertheless argues that, even if the regulations are inapplicable to him, LDI may still be held per se liable under the Kernan rule in light of the Ninth Circuit's decision in MacDonald I.

18

In <u>MacDonald I</u>, the plaintiff, a free diver, was injured when he undertook a free dive to help his employer retrieve a mooring line. 442 F.3d at 1199. The court below held that the <u>Kernan</u> Rule did not apply because the plaintiff was a free diver and therefore the Coast Guard commercial diving regulations did not apply to him. The Ninth Circuit concluded, however, that the district court should have considered whether the defendant's failure to adhere to the Coast Guard regulations nevertheless "played any part, 'even the slightest,' in producing [the plaintiff's] injuries . . . ." <u>Id.</u> at 1203. In so holding, the court noted that the Supreme Court stated in <u>Kernan</u> that the general tort doctrine that an employer is liable for violation of "a statutory duty only where the injury is one which the statute was designed to prevent" is inapplicable under the Jones Act. <u>Id.</u> (citing <u>Kernan</u>, 355 U.S. at 432). Thus, the <u>MacDonald I</u> court concluded, in order to apply the <u>Kernan</u> Rule, the regulations need not be applicable to the plaintiff himself, so long as his employer's failure to adhere to them played some part in the plaintiff's injury. <u>See</u> <u>MacDonald I</u>, 442 F.3d at 1203.

Importantly, however, it appears the parties in <u>MacDonald I</u> did not dispute that the Coast Guard's commercial diving regulations were applicable to the defendant's operations at the time of the plaintiff's injury, even if the regulations were nevertheless inapplicable to the plaintiff himself as a free

19

diver. Specifically, there was no dispute as to whether the
defendant's operation was recreational or commercial, as the
activity the parties were engaged in - moving a mooring line -
clearly did not fall within the regulatory exception for
recreational diving. Indeed, upon remand, the district court
found that the regulations were applicable to the defendant's
operation at the time of plaintiff's injury because another
employee was on deck in SCUBA gear assisting with moving the
mooring line. See MacDonald v. Kahikolu, Ltd., 2007 WL 4547552 at
*5 (D. Haw. Dec. 26, 2007). Thus, in MacDonald I, unlike in the
instant case, while the Coast Guard regulations may have been
inapplicable to the plaintiff, it appears they were nevertheless
applicable to his employer at the time of his injury.

Because there was no dispute that the defendant was
subject to the Coast Guard's regulations in MacDonald I, the
issue for the Ninth Circuit was whether the employer's violation
of a Coast Guard regulation that was not meant to protect the
plaintiff's particular activity was nevertheless causally related
to the plaintiff's injury. 442 F.3d at 1203. Similarly, there was
no dispute in Kernan itself that the Coast Guard's navigation
rule that the defendant violated was, in fact, applicable to the
defendant. See Kernan, 355 U.S. at 428. The dispute was, rather,
whether the defendant's violation of the Coast Guard navigation
rule regarding the proper height of a navigation lamp was

20

causally related to the plaintiff's death in a fire. <u>See id.</u> at
432-33.

Thus, it appears that a threshold requirement for the
causation analysis required by <u>Kernan</u> is that the Coast Guard
regulations be applicable to the defendant's operations at the
time of the plaintiff's injury. <u>See, e.g.</u>, <u>MacDonald I</u>, 442 F.3d
at 1203 (concluding that the district court erred in failing to
consider <u>Kernan</u> causation, even though the plaintiff was not a
commercial diver, where the defendant was engaged in a commercial
diving operation and thus subject to the Coast Guard
regulations); <u>Fuszek v. Royal King Fisheries, Inc.</u>, 98 F.3d 514,
516 (9th Cir. 1996) (concluding that the district court erred in
reducing the plaintiff's damage award for comparative negligence
because his injuries were attributable in part to the vessel's
failure to comply with a Coast Guard regulation regarding on-
board equipment that both parties agreed was applicable to the
vessel); <u>Oglesby v. Southern Pacific Transp. Co.</u>, 6 F.3d 603,
604-05 (9th Cir. 1993) (involving an employer's alleged violation
of the Boiler Inspection Act, where there was no dispute that the
employer was subject to the Act's requirements). Indeed, the
Court has been unable to locate a single case applying <u>Kernan</u> per
se negligence in a situation where the defendant employer is not
subject to the regulations it is alleged to have violated. This
makes sense, as it would be unfair to subject a defendant to per

se liability for violating a statute or regulation with which he was not even required to comply. The Court therefore concludes that, because LDI was not subject to the Coast Guard Commercial Diving Operations regulations at the time of Plaintiff's injury, the <u>Kernan</u> Rule is inapplicable.

Finally, the Court notes that even if <u>Kernan</u> does require further analysis as to causation where, as here, the Coast Guard regulations at issue are inapplicable, the Court finds that issues of fact preclude a determination as a matter of law that the <u>Kernan</u> Rule applies. Specifically, pursuant to the <u>Kernan</u> Rule, a plaintiff must show that the defendant's failure to comply with the Coast Guard regulations contributed in some way to the plaintiff's injuries for per se negligence to apply. <u>See</u> <u>MacDonald I</u>, 442 F.3d at 1203. In the instant motion, however, neither party makes any arguments or presents any evidence regarding whether LDI's alleged violations of the Coast Guard regulations played any part in Plaintiff's injuries. (<u>See</u> <u>generally</u> Mot. & Opp'n.) Indeed, Plaintiff has not set forth any evidence going to the causal connection between LDI's alleged violation of the regulations and Plaintiff's injuries. Thus, even if the Court were required to analyze <u>Kernan</u> notwithstanding the inapplicability of the Coast Guard regulations here, questions of fact preclude a finding that the <u>Kernan</u> Rule applies.

The Court therefore DENIES the motion insofar as it

cannot conclude as a matter of law that LDI was negligent per se pursuant to the Kernan Rule.

III. The Pennsylvania Rule

Plaintiff also seeks judgment as to the issue of whether the Pennsylvania Rule applies here. Specifically, Plaintiff argues that, pursuant to the Pennsylvania Rule, the burden should fall on LDI, rather than Plaintiff, to prove causation. The Pennsylvania Rule provides that, if a vessel involved in an accident violated a statute or regulation intended to prevent such an incident, it is presumed that the ship owner was at fault, and the burden of proving causation shifts to the ship owner. See MacDonald v. Kahikolu, 581 F.3d 970, 973 (9th Cir. 2009) (MacDonald II); The Pennsylvania, 86 U.S. 125, 136 (1873). The ship owner then has the heavy burden of proving "not merely that [its] fault might not have been one of the causes [of the plaintiff's injuries], or that it probably was not, but that it could not have been." The Pennsylvania, 86 U.S. at 136. In order for this burden-shifting to occur, however, "the injury must be of the kind intended to be prevented by the statute or regulation that the defendant violated." MacDonald II, 581 F.3d at 975.

As an initial matter, the Court notes that it is not at all clear in this circuit that the Pennsylvania Rule applies to cases that do not involve a collision or other "navigational"

accident, or to claims made under the Jones Act. See <u>MacDonald</u> <u>II</u>, 581 F.3d at 974 (collecting cases and noting that the Ninth Circuit has yet to apply the <u>Pennsylvania</u> Rule to cases not involving a collision or navigational accident, or to a Jones Act claim). Even assuming without deciding that the rule is available in this type of case, however, "[a]ll courts have consistently required that there be a threshold causal connection between the violation and the injury before the Rule will apply." <u>Id.</u> at 975 (citing cases). Specifically, a plaintiff must show that the injury he suffered was of the kind intended to be prevented by the regulation that his employer violated.[8/]

Here, as discussed above, the Court finds that the Coast Guard Commercial Diving Operations regulations were, on

---

[8/] As the Ninth Circuit stated in <u>MacDonald II</u>, it is this requirement that illustrates one of the differences between the <u>Pennsylvania</u> Rule and negligence per se after <u>Kernan</u>. <u>Kernan</u> dispenses with the traditional negligence per se requirement that the statute must be designed to prevent the kind of injury actually at issue. See <u>MacDonald I</u>, 442 F.3d at 1203. Thus, given the relaxed causation standard under the Jones Act, liability follows if there was a violation of any statute or regulation that played any part in producing the injury, even the slightest. The <u>Pennsylvania</u> Rule, by contrast, still retains the requirement that the statute be intended to protect against the type of injury that in fact occurred. Additionally, the <u>Pennsylvania</u> Rule is not used to establish negligence; it only addresses the burden of showing causation. See <u>Mathes v. The Clipper Fleet</u>, 774 F.2d 980, 983 (9th Cir. 1985) ("The only relevant difference between the two theories is that the [<u>Kernan</u>] per se rule requires the plaintiff to prove causation whereas the <u>Pennsylvania</u> Rule shifts the burden of proof on causation to the defendant."). Assuming the Rule applied here, LDI would have the burden of showing that its violation of the Coast Guard regulation did not play any part in causing Plaintiff's injury.

their face, inapplicable to Plaintiff, who was not a commercial diver at the time of his injury as that term is defined in 46 C.F.R. § 197.204. Importantly, "[s]ince the <u>Pennsylvania</u> Rule is intended to enforce strict adherence to safety regulations and statutes, the Rule applies only when a statute or regulation actually imposes a mandatory duty." <u>MacDonald II</u>, 581 F.3d at 976. Here, because the Coast Guard Commercial Diving Operations regulations were inapplicable to Plaintiff at the time of his injury, LDI was under no mandatory duty to comply with them. Thus, the <u>Pennsylvania</u> Rule does not apply. The Court therefore DENIES Plaintiff's motion to the extent he seeks an order finding that the <u>Pennsylvania</u> Rule is applicable here.

### **CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Partial Summary Judgment. The Court GRANTS the motion insofar as it finds that, as stipulated by the parties, there is no question of fact that Plaintiff was injured in the course of his employment for LDI as a Jones Act seaman. The Court DENIES the motion insofar as it finds that Plaintiff was not a "commercial diver" as that term is defined in 46 C.F.R. § 197.204. The Court further DENIES the motion in that it declines to apply per se negligence pursuant to the <u>Kernan</u> Rule, or the burden shifting set forth in the <u>Pennsylvania</u> Rule.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 28, 2014



_____
Alan C. Kay
Senior United States District Judge

Layman v. Lahaina Divers, Inc., Civ. No. 12-00602 ACK-BMK, Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment.